All right, we'll turn to the last case on our calendar today, U.S.A. v. Anthony Wiggins. Good afternoon, Your Honors.  My name is Allegra Glasshauser, and I represent appellant Mr. Wiggins. Your Honors, this case should have been straightforward. Police thought they saw a butt of a gun, they chased Mr. Wiggins, and they found a gun near the chase. Instead of hearing the simple fact pattern, the jury also heard a complicated text message drama that included threatening to kill someone, pointing guns in people's faces, and obscenity-laden name-calling. These text messages, which had nothing to do with the facts of Mr. Wiggins' arrest, should never have been admitted for a number of reasons. First, the judge should never have granted the second expansive search warrant for Mr. Wiggins' phone on the eve of trial. The probable cause that the government put forward in the affidavit for the search warrant was unconnected to the cell phone. There were three alleged crimes. One had been completed before the cell phone was obtained by Mr. Wiggins, and the government knew that from their first, more limited search of the phone, which had not uncovered anything incriminating. The other two crimes alleged in the search warrant were straightforward street crimes. There was no allegation they had anything to do with the cell phone or that there would be any connection expected to the cell phone. This warrant should never have been issued, and defense counsel made that clear to the court. Well, in the search of the apartment, though, they found the magazine and a bullet, right? Yes, Your Honor. Right. How is that not connected to the gun case? Isn't that what you just said, that the other two crimes that were in the search warrant application were the burglary of the restaurant and then credit card fraud, right? And a lot of those materials came through the search of the grant apartment, right? Well, Your Honor, I'm not challenging the search of the apartment. I'm challenging the search warrant for the cell phone of Mr. Wiggins, and particularly the second search warrant for his cell phone. There's a first search warrant of his cell phone that I also don't challenge. I thought you were saying that those other crimes should not have been in the search warrant application because they're totally irrelevant to the possession of the handgun. Isn't that what you said? Because they're totally irrelevant to the cell phone, the area to be searched. The possession of a gun had nothing to do with his cell phone. There was no reason to think that the cell phone would have evidence of the crime. The alleged fraud occurred before Mr. Wiggins owned the cell phone, so it had been – the allegations weren't during the time that he had this cell phone. It was only a short time before, right? The search was May 29th of the grant apartment. The burglary was July 6th, and July 9th was the apprehension of him and the gun, right? Yes, Your Honor. So they're close in time. But the government knew that he didn't own the cell phone at the time of the alleged fraud. But they also put on evidence that – testimony that oftentimes when you get a new cell phone like this, you incorporate the memory of the past cell phones that you had, right? Well, there was no testimony. The affidavit asserted that, but it didn't say they had any reason to believe that Mr. Wiggins had done that. And in fact, given they had already searched his phone and seen that his text messages did not begin before he obtained the phone, the record actually showed that there was no indication that he had anything from a previous phone on this phone. When did he get the phone? What date exactly, Your Honor? It was right around the time of all this, right? It's 10 days after the alleged fraud. I'm not sure of the precise date. I could check for rebuttal. I think it was like July 6th that he got the phone, right? I believe it's something like that, Your Honor. But it's 10 days after the conclusion of the fraud, and that's not disputed. Warrants need to have a connection both to the probable cause and to the area searched. And here we're missing that. The government instead tried to rely on these sort of assertions that would apply to anyone, that people may sometimes upload previous phones to a new phone. There was no evidence of that here. What is your response to the good faith argument? Are basically you taking the position that this was so devoid of probable cause that the agents should have known that irrespective of the fact that the judge concluded otherwise? Is that the position? Or are you saying that somehow the good faith exception has no bite in the particular circumstances of a pretrial search warrant issued with participation of defense counsel or something like that? Well, both, Your Honor. There are a number of reasons that the government's good faith argument shouldn't sway this Court. First, the government didn't raise it below, and it is their burden to raise and show good faith. Second, the warrant was objectively not reasonable because there was no connection between the probable cause. Why did they need to raise good faith if the district court found probable cause? Well, because defense counsel argued that there was no probable cause, and that's the moment when they could have said, in any event, we had good faith to search the phone. Defense counsel raised this argument a number of times, both before the warrant was issued and then also afterward, which is the normal moment when the government raises good faith. But it is a little bit different here. The second search was authorized by the district judge conducting the trial, right? I mean, usually the good faith arguments made when you get a search warrant, you get the fruits of the search warrant, and a magistrate judge did it two years ago. Here, it would be a little odd to raise good faith at the trial to say, Your Honor, you were wrong in issuing that warrant, but even if you were wrong, these officers had good faith in executing that warrant you just gave them three days ago, right? It's a little odd circumstance for a good faith argument. The circumstances here are certainly odd. I'll give that to Your Honor. But this is the sort of determination that is normally made in the first instance by the district court, and this court has in the past, for example, in Gallipin, sent cases back after vacating them for the district court to make the good faith determination in the first instance. But because defense counsel did raise these objections before the search warrant was issued, the government also should have been on notice to this problem, that there was a disconnect between what they were asserting as probable cause and the And they took no steps to limit that search to create any sort of nexus. But, Your Honor, that's not the only problem here with Mr. Wiggins' trial. Even if you find that that, that for whatever reason, that that part was okay, the text messages here that they use at trial should never have come in. This court has a case in United States v. Williams that addresses a very similar issue and rejects the arguments that the government makes today. The government says that text messages about threatening to kill somebody with a gun shows motive or opportunity. But in Williams, and the same here, when the case has a simple fact pattern of a stop, a chase, and then the question is police credibility, motive isn't at issue. None of the cases cited by the government- In Williams, the court, our court said that the government hadn't even argued to the jury that the other crimes were relevant for motive and opportunity. It had argued something that certainly sounded like a direct argument of propensity, that it showed exactly what was going on and established who the defendant really is. And that's what was argued to the jury. An argument like that wasn't made here, was it? This guy is a thug and that's why you should convict him? Well, the argument was made that Mr. Wiggins uses guns to threaten people. He puts guns in people's faces. That's how the defendant uses guns. That's similar to the argument in Williams, and I also don't- The gun line, but it also suggests that that's why he's a guy who needs a gun or uses a gun or has a gun. He's not just some guy who was standing around in a place where a gun happened to be, he had a reason to have guns. But that's precisely the argument that this court rejected in Williams. And it wasn't based, that was not a summation misconduct issue. It was exactly like this case. It was a 404B issue. And the Williams court said that that kind of evidence is not relevant for a kind of straightforward fact pattern. And that makes sense looking at all the cases that the government cites. The cases that they cite where prior gun possession is allowed for motive or opportunity involve complex fact patterns. The prior gun possession relates to something additional, like a relationship to a co-conspirator. Or it was on the person at the time of their arrest and it's part of the narrative of the arrest. Or it's the same caliber as the gun that is in the arrest. None of these cases address the situation where we have a street stop and then the government tries, or the government succeeds in introducing complicated text messages that are a number of weeks old. Could you bring in a witness to say, a few weeks before he was arrested here, I saw him with a handgun? Would that be permitted evidence in a 922G case? No, Your Honor, unless the witness said, I saw him with this handgun. It looked like this gun, it was rusty, it was bent, it had the same characteristics. Then that would be relevant evidence of the person's possession of the gun. Or- I pulled a gun on her best friend a few weeks ago. That was one of the text messages, right? That was one of the, it was I pulled a grip on her. That was one of them. Another was, I didn't do that. And then there were many, many, many, many more. This is pages and pages and pages of exceedingly prejudicial text messages about a crime that is way more serious. Threatening to kill somebody with a gun is undoubtedly more serious than just having a gun in your waistband. Well, what should Judge Garifuss have done with respect to the government's text messages? They should have been excluded. And did your predecessor counsel ask for their exclusion? Repeatedly. Did your predecessor counsel ever ask for limiting instruction on how the government's text messages should have been considered by the jury? Well, the judge let in those text messages for any purpose. So there wasn't really a limiting instruction to give. The judge let them in both for direct evidence- From what you just said, it's exactly what he could have given. But the judge had rejected counsel's argument that they weren't direct evidence. So given that there's no limiting instruction to be given, the judge had allowed them in for any purpose, although the record is very confusing. And that's because this happened the day, the day trial started is when the government asked to introduce these many pages of text messages. So there's a lot of back and forth about how they're admitted and the parties are still in disagreement about why they were admitted as the case is going towards summation. The instruction the judge gives, the non-limiting instruction, is that the jury can consider the text messages for their truth. Thank you. Okay, but you're not, you're not arguing that there should have been a redaction then. You're saying the only thing that, the only position that was raised below is they shouldn't come in at all and that's the ground you're standing on. You're not suggesting that the error was in not limiting it to something like a stipulation that in a text conversation, he said something like this one sentence about pulling a grip. That's not the argument that you're making because it wasn't clear. I would agree that the prejudice is worse because of the extensiveness of what comes in, including all the obscenities, because of the way it comes in with the prosecutor reading a back and forth with the witness, spelling the words that she presumably thinks are too offensive to even say out loud to the jury. That all makes it worse. Thank you very much. Thank you. We reserve time, and I've given you a point of extra time, lest there be any doubt on that score. Okay, let's hear from the government. Thank you, Your Honor. May it please the Court, Assistant United States Attorney Kevin Trowell for the government. If I could begin with the text message point, and then to the extent Your Honor want to further discuss the warrant, come back to that. I think it's important to note that my adversary's argument is based in significant part about the alleged prejudicial value, the unfairly prejudicial value of the text messages. But her trial counsel, her predecessor, didn't actually raise a 403 objection at trial. So this is on A116. He's raising an objection as to propensity, and this is now days after—this is—so the government first raises this issue on the 5th. This is now the next day when the government is intending to introduce the text messages through an agent. At that point, having had a day to sleep on his objection and consider it, he says, Your Honor, the government is offering these for propensity. The judge then gives some explanation, and he says—the judge, Judge Garifuss, then cites the 403 standard and says, I assume you're raising this too. Trial counsel says yes, doesn't elaborate, doesn't say the crimes are more serious, doesn't offer any color whatsoever on that argument other than to accept yes, 403. The government having—the court having raised it, rejected it, hearing nothing about why it should do that, and the text messages were admitted. Whether that goes to the standard of review or rather just to the purported, as my adversary would have you believe, obviousness of the unfair prejudice here, I think either way what you're left with is a record where the parties at the time, given a 5 a.m. stop, drug area, cash in the pocket, flight from police, fighting stance, all this, didn't appear to substantially outweigh the obviously probative value of the fact that this defendant had possessed a firearm in the very recent history—his very recent past. I think my adversary is coming very close to suggesting that there should be a per se rule that felon in possession cases, the government can't offer 404B evidence. That's obviously not in the rule. The rule doesn't reference the complexity of the case or whether there are other crimes charged or whether the government is offering it for more than one of the permissible purposes. 404B and 403 act in conjunction to permit the government to—maybe I got that backwards—404B and 403 act—403, rather—act in conjunction to permit the government to introduce evidence for the listed permissible purposes, full stop. So to the extent my adversary suggests that because there is no case exactly on point factually, 404B doesn't apply, that's just nowhere to be found in the law, and I suggest the Court should reject it. Williams is distinguishable for a host of reasons. I think the most important one is that the government there made those summation—the comments in summation about who the defendant really is. And also, the Court was obviously troubled by the fact that the government had represented to the Court that it was going to link the defendant to the guns in the room, which in the Court's view, it never did. Here in the government's summation, the government expressly said, you may consider this for access and motive, full stop. There is no part of the government's summation where it offered this for an improper purpose. Now, in the defense summation, a significant part of the summation was spent on the fact that the gun was rusty and old. That's tantamount to a motive argument. Why would he possess this? Why would he possess this piece of garbage? That was the argument he made to the jury. On rebuttal, the government stood up and said, you know why. It's in the text messages. He's threatening people with it. Whether he has to turn the cylinder to fire it or not is not relevant to the uses for which he's putting his firearms. It was an appropriate rebuttal to the argument that trial counsel made. Now, I'm happy to continue on that if there are other questions, but I can just return very briefly to the search warrant point as well, if that's okay with Your Honor. Alito, you don't disagree there was a 403 ruling? There was, raised by the Court and then decided by the Court sort of in the same breath. He asked, I assume that's what you mean, I assume that's part of it. Trial counsel said, yes, it is, and then the Court said, denied. I find that it's not substantially outweighed, and he admitted it. And again, that's A116. On the question of the warrant, I think there are a couple of incorrect assumptions here. The first one is, it's true in a general sense. My adversary cites Clark, this Court's decision in Clark. Clark says it's true in a general sense, it's the government's burden to show good faith. But what that means in the context of a warrant is quite different than what it means in, for example, Galpin, where there was no warrant. That was a probation search where the government made a good faith argument there. What Leon says and what Clark says is, a warrant is presumptively valid and reliance on a warrant is presumptively in good faith unless one of the four categories is met. Now, this is not a situation of law, the good faith exception. Well, it's ultimately a question of fact in the sense that the defendant has to show that one of those four limited circumstances laid out in Leon applies. And this is not — there's no mystery to this. This is obviously a well-trod path here. So she's moving to suppress a warrant or to say that the warrant lacked probable cause. In order to do that, under Leon, she must show that one of these four circumstances existed. She made no attempt to do that in the opening brief, did it in the reply for the first time, by suggesting facial invalidity or — sorry, devoid of factual circumstances. The Court talked about that. That is a question of law ultimately, right? I think so, yes. There's no issue here about what did one of the agents think in his own mind about something. The question is, is this not only lacking in probable cause, but so devoid that no reasonable agent could rely on it. Isn't that — I think that's true, Your Honor, although I'll note that in Clark, Jadragi goes through the four exceptions sort of in detail and addresses each of them. And for this one, she notes that it both encompasses a facial component, what's on the face of the warrant, but it also encompasses an intent to deceive on the part of the agent. So there is — I think that's largely inferred from what's in the warrant. But she's — But why would the agent attempt to — if the agent — it would be — I thought that was a different exception. If the agent doesn't tell the right facts or suppresses information or puts false information into the affidavit, that's one sort of situation. But I don't think anyone's alleging that here. The information is there. It either persuades or doesn't persuade a judicial officer that there's probable cause. And I take it, if it doesn't persuade us, for example, that there's probable cause, the next inquiry is, is it so far off from probable cause that no agent could reasonably rely on it? Where is there room for the agent deceiving in that? I think you're right. And I don't think it's — I don't mean to belabor the point. I just — I'll point out that Jadragi notes in this — in this particular category set forth in Leon, she said, And so, I mean, I'm not — I'm just pointing out that it's — But I don't think that Ms. Glashowser is arguing that. Correct. Correct. But I think that's actually a problem for her. And that's part of what I'm saying about the import of the decision in Clark. What the Court said in Clark is — I hear what you're saying. Okay. Thank you, Your Honor. May I ask you another question about that second warrant, though, is that there's a lot in the second warrant application and the affidavit about the burglary where the iPads were stolen, or five stolen iPads, I think, and then the search of the Grant House where there were credit cards that apparently didn't belong to him that gave — gave an access — a violation of the credit card access statute. But it's odd that this application with those other crimes was presented during the trial only for the 922G. So that supported probable cause for the — for searching the cell phone more deeply than in the first search. Right? And so that's part of the question. It's kind of odd that during this trial, just for the 922G, you throw in the credit card fraud and you throw in the burglary which produced the Apple — the stolen Apple computers in the backpack. But then he was never prosecuted for the — either of those. It's just an odd circumstance. Why wouldn't you just stick with the 922G information when you're going — during the trial for a second search warrant from the trial judge? Well, I think there — to the extent you're asking whether any of the crimes identified in the warrant would be sufficient to have established probable cause in the warrant, I think that may well be the case. I didn't personally draft it and I didn't do the trial below, so I can't answer what was in the AUSA's mind at that moment. As I read the warrant, what I understand it to be doing is saying, judge — reviewing judge, agents, the — the affiant here has information that this defendant was involved in several crimes. And I'll note, there's nothing in the warrant that suggests that the access device charge — access device allegation was a point-in-time crime. I mean, there was evidence that there was access device fraud on or around May 29th, but there's no reason to believe that had been completed. And what the warrant said is, we had evidence to believe he's involved in this. So I think that's an important distinction to make from — from what my adversary said. But the — the government is saying to the Court, we have evidence that the defendant is involved in all of these crimes. And here's the link to his phone. Communications with co-conspirators, potentially photographs, GPS data, all of these  But its broadness doesn't relate just to the 922-G. It's so broad in searching his — his device and devices that it would incorporate the credit card fraud and the — and the burglary of the restaurant, the iPad. Yeah. Well, I mean, to the extent that the government obviously believed and the district court agreed that it had — that the government had probable cause to believe he was involved in those crimes and there'd be evidence on the phone. And so, of course, we wanted to search the phone for that evidence in — in hopes — it's always in hopes that you're going to find evidence that leads to a charge or it's a link in a chain that leads you to a charge. Here, he was convicted of trial. He was sentenced. I can't speak to the state of the investigation of those other things. But I don't think there's a reason — a legal reason or, for that matter, a factual reason why the government would have withheld the information it had about those other crimes at that moment, given that, in its view and in the district court's view, ultimately, it had probable cause to search the phone. In other words, what you're saying is it doesn't matter that this was presented to Judge Garifas. If you had gone to a magistrate judge with the same information and said, look, we're investigating all three of these crimes, one of which is actually already charged, but others not, it either gives probable cause or it doesn't to have that search. If it did and you obtained evidence and you charged the fellow with other things, that would be fine. And if it didn't, you'd have suppression problems in those other cases or whatever. There's nothing that prevents you from listing the three crimes. Is that the argument? Exactly. And I think — yes. And here — So I guess I have one other question about this. For any of these crimes, I'm a little puzzled. You're saying there's probable cause to believe he's involved in these crimes. And therefore, there's probable cause because people use cell phones a lot to believe that he's probably talking to his co-conspirators about those crimes on the phone and, therefore, we can search the phone? No. And that's not the allegation that's in the law. So then what is it that links the phone? In other words, just as you can't say, we think this guy's involved in a crime — and usually you find evidence of people's crimes in their houses, so we get a — we have probable cause to search his house. That's not an automatic. Sure.  thing in the house. So what is it that links — that says there's a reason to believe that on — that's not applicable to any guy involved in these kinds of crimes who owns a cell phone, that suggests this fellow had something on his phone? Sure. First of all, just to sort of set the bar, I think part of — one of the premises underlying my adversary's position on this is that what the government has to expect or tell the court it expects is devastating evidence or smoking gun evidence. No, just some evidence. Exactly. And so — Why — what suggests that he ever used the phone in connection with stealing iPads out of a restaurant? Yes. So on May — just as an example, May 29th is the search of the Grant residence. They find the box with the access devices in it and the other materials. The phone records that the government had obtained under the first warrant, which is not being challenged here, showed significant correspondence, significant calls between the defendant and the two women whose names were on those access devices. Now, the mere fact of their communication is obviously evidence. It's not damning evidence. It's not evidence that would support an indictment, likely, but it's evidence of the relationship that supports an inference that the three of them are involved together. And if they're talking — and once you've got the evidence from the first search that they actually were talking to each other and you have independent evidence that they're involved in a conspiracy together, it's not unreasonable to think that there would be conversations about that. Conversations, social media, et cetera. Yes, that's right, Your Honor. There are no further questions. Thank you, Your Honor. Ms. Glashauser, you've reserved two minutes. Thank you, Your Honor. Just to start with Judge Lynch's question, I think that goes to the heart of the matter. There is no link to the phone. That's the problem with the warrant. And the one thing that the government articulates, that Mr. Wiggins communicated with his girlfriend, Ms. Grant, and their other friend, before he got this — or, excuse me, after that alleged crime, when he had this cell phone, isn't enough to show that there's anything else on the phone linked to the crime. It's unsurprising that he communicated with his girlfriend. That's not a reason to search his entire phone, particularly when the evidence showed that that crime occurred before he got the phone. The government says that they don't have evidence that it didn't continue occurring, but that turns the whole thing on its head. They need to show probable cause that the phone is linked to the crime, not that there isn't evidence to show that it's not. That's the opposite standard. And just a small point on the warrant issue. Galpin, in which the court sent it back for a good-faith determination after reversing, is a warrant case. So the government said it wasn't — it's about a search warrant. Can I just go back to what you just said? Yes, Your Honor. I'm just looking at the application for the second warrant, and it does talk about continued contact over the phone between Grant and Crawford and the defendant. And Crawford and Grant's names are on the fraudulent credit cards. Doesn't that show some connection with the warrant — the first warrant? In other words, the connection between — look, we looked on the phone, because in the first warrant, you allowed us to look at who was talking to whom on the phone or texting to whom. And now we see that Grant and Crawford are in there a lot. We don't know what they were talking about. They're in there a lot. We know that they were involved in the apartment that was searched, where he had the credit card fraud evidence. Doesn't that show some connection to the fruits of the first search? Or am I missing something you said? Well, Your Honor, that crime, the fraudulent device — the access device fraud occurred before the phone was purchased or obtained by Mr. Wiggins. So that he continued talking to Ms. Grant, who is his girlfriend, is not evidence that the phone has any — that there's any probable cause that the phone has evidence of the crime that occurred before he received the phone, before he obtained the phone. Don't people talk retrospectively about things they did in the past? And furthermore, why does the fact that there was evidence found in the apartment on a given day about access device fraud mean that that access device fraud must have ended then? That's usually not the way it works with access device fraud. Your Honor, it doesn't mean that, but the government has to show probable cause that it continued during the relevant time period that Mr. Wiggins had the phone. They haven't done that. That's — that's their job to do. Thank you, Ms. Flesch. If — if I may just briefly, Your Honor? No, it's my job to close the hearing. Thank you very much. We are in recess. Thank you.